Good afternoon. The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon everyone and I'd like to welcome all counsel who are appearing before us in this case. I'd like to thank our good friend Judge Benitez for sitting with us by designation. Judge it's great to have you back with us again. Thank you for doing this. Great to be back. We'll go ahead and hear argument this afternoon in Vanegas v. City of Pasadena. Case 21-55478. Ms. Heming will be pleased to hear from you. Good afternoon, your honors. May it please the court. I'd like to reserve three minutes for a rebuttal. My name is Krista Heming and I represent the appellant in this matter, Javier Vanegas. This case comes before this court after a decision by the lower court to dismiss the case and grant motion for summary judgment. This was the 1983 civil rights case and the question before the court today is whether Mr. Vanegas rest for failure to present identification was an unlawful arrest and seizure of his person because California does not have a stop an ID statute and it is well established law in California that you do not need to present your identification until the booking process has commenced. So in this case, Mr. Vanegas was leaving court. He was walking out of the courthouse. He was stopped by an officer who was investigating a call for service. He stopped Mr. Vanegas and he immediately began demanding that Mr. Vanegas present his identification. When Mr. Vanegas asked why, what kind of crime was he being charged with? Counsel, just a second. Didn't he first ask him for his name if his name was Vanegas or Javier? Yes, your honor, he did and I believe that my Mr. Vanegas responded, you know, who are you and at which point Officer Klotz did identify himself as a law enforcement officer and then proceeded to again ask him for his identification. Mr. Vanegas and the officer had a constant conversation about him presenting identification. Mr. Vanegas wanted to know what crime he was being charged with, why he was being stopped, and the officer only cared about whether or not he was going to present his identification. At some point, the officer did tell him, you know, we could do this in handcuffs or we can do this without handcuffs and if you want to continue to deny me your identification, we can go ahead and arrest you and put you in handcuffs. Counsel, as a textual matter, the facts do seem to fit California Penal Code 148 that the failure to present ID does delay a public officer. So why is that not the answer? Well, because the answer is that there are many, many, many different questions that the officer could have asked to investigate his call for service and none of them had to do with Mr. Vanegas presenting his identification. They could have asked him where he was coming from, where he was going, if he had had any encounters with anybody, you know, if he had stopped to talk to somebody. Well, in this case, though, the victim identified him by name. So asking him what his name was or presenting his ID would have solved the case immediately. Yes and no. It would have solved the case of that's Mr. Vanegas, but it would not have solved the case of whether or not Mr. Vanegas confronted the person, whether or not he was aggressive or screaming or whatever the allegations against Mr. Vanegas were. It wouldn't have solved that matter under any circumstances. All it would have done was given the officer his name. And in California, we're not required to give our names to an officer. Why is this? I mean, this is the second half of the interaction. The first half of the story is that there was a report that Mr. Vanegas had, you know, disturbed is probably an understated word of describing the conduct, but that he had harassed or disturbed this attorney. And that, you know, the call then went out that there was somebody walking on the street. He was going in that direction. The officer came out and it was only him there. And he asked, are you Javier? And there was no answer. So why wasn't there probable cause based on everything the officer knew at that point, based on the collective knowledge? So I think that that would be a trial by issue of fact, which means that summary judgment would not have been appropriate in this matter, because we don't have the true facts of, of, of what the complaint was or the allegation was and how that investigation played out. So what would be the crime that Mr. Vanegas would have been arrested for? Would it have been the 148, which again, we dispute and I'm not, I'm sorry, not the 148, the 415 disturbing the peace. Would it have been the 415 disturbing the peace? We haven't had a chance to, you know, try that issue because we got dismissed at summary judgment. But I do think that as a trial by issue of fact, as to whether or not there was probable cause based purely upon the call for service, because that's the only information that they had, because they did not conduct an investigation with Mr. Vanegas. But counsel, before you get to the probable cause to arrest, certainly the officer had articulable facts upon which he could believe that there was criminal activity that was afoot and that perhaps your client was engaged in that activity. And so therefore the officer could in fact conduct a Terry stop, right? You agree with that? We do concede that there was. Okay. And so the next step for the officer to decide is whether or not I'm going to take this person into custody and arrest him who perhaps was not the person he was looking for. Or on the other hand, he could ascertain the person's identity and then find out that maybe it was the person that was involved or potentially involved in the criminal activity, and then make a decision as to whether or not he was going to arrest him or not. Those are two perfectly reasonable alternatives. There's only one way to resolve it in a reasonable way, isn't there? Well, unfortunately, the record is very clear in this matter that Mr. Vanegas was only arrested, was only taken into custody and only placed in handcuffs because he did not present his identification. He was told that multiple times by the officer, even after booking. And while he was sitting in handcuffs at the station, the officer told him, hey, we didn't have to go this route. We didn't have to arrest you. All you had to do was show your ID. But in California, you don't have to show your ID. California courts have said the only time you have to present ID is during the booking process, which Mr. Vanegas did in this matter. So go ahead. Go ahead. Well, I just wonder what California case are you citing for this proposition that you don't have to show your ID? I've not seen that. So in Caroga, Your Honor, in the California Supreme Court case of. The people versus Caroga, they state that the failure to identify yourself in the booking process is maybe a violation of California Penal Code 148, but merely failure to identify self-identify prior to booking is not a crime statement that has been held that an individual is free to refuse to identify themselves or to answer questions. That's also cited in R.E. Gregory, which was a case with a juvenile who refused to present identification. People, Christopher and in Ray people, the chase were failure to identify to a police officer is not a violation of California Penal Code 148. So that's why I think that this case is appropriate for the Ninth Circuit to decide, because we've had California jurisprudence that says you do not have to present identification prior to arrest. It is not a violation of 148. We do not have a stop and ID statute like HIABLE, and it cannot be read into 148. So, although, there's been at least a couple of federal district court opinions that says that you can be arrested for failure to ID in California. And there's actually an unpublished Ninth Circuit opinion that says the same. So what do we do with that? And two, doesn't that at the very least mean that there's no clearly established law here? Yes, so for to your first point, I do believe the district courts got it wrong. The substantive law here needs to be applied. And the substantive law is what has been decided in California. How California treats that 148. The substantive law is the 148. How California courts treat the 148 is what needs to be applied in these matters. So I do believe that the district courts got it wrong. So as to the question of whether or not it was well established, you know, defense has definitely tried to make the argument that there's, you know, qualified immunity applies in this case because it's not well established. Well, I don't think it may not be, there may be a mix in the courts at the federal level, but it is sure well established in California under the California courts. And so California peace officers need to know how 148 operates and California peace officers should know through the jurisprudence of well-established law that there is no stop and ID statute in California and 148 cannot operate as one. Counsel, can I ask you, when you were talking about this Caroga case, can you cite me to a specific page where I can find the language that you're referring to? Absolutely, your honor. People v. Caroga, that's 16 Cal app fourth. Yes, I've got the, I've got the case. Can you? 961 at page 970. Okay. Thank you. So your honors, this is our position that there was no, no probable cause to arrest Mr. Vanegas in this matter because simply the probable cause in which the officers are relying on is the failure to stop an ID in this matter. Further, the defense does raise that there may have also been an arrestable issue based upon the 115. And I believe that the court did touch upon that earlier in my arguments is that there may have been this underlying probable cause to arrest. And I believe your honor, that it is our argument that that is a tribal issue of fact in which we dispute whether or not there was a arrestable issue for 415. We never got down to the investigation. We simply have one person making a complaint on a phone call. And there was no other, there's no other articulable facts that Mr. Vanegas did disturb the peace, that he committed a one for 415, or that if he did commit a 415 disturbing the peace, that it was an arrestable defense and not simply just a site and release type of defense. So with that, if there's no other, on the 415, I thought under California law, an officer cannot make an arrest on a misdemeanor unless he or she observes it. Yes, your honor, that we do believe that that is our position as well that the, that in under California law, a police officer can arrest for a misdemeanor if they observe the misdemeanor. So are you saying that? Yeah. So would it have been a valid arrest for 415? Here? No, your honor is also tribal issue of fact, they did not observe the 415. Therefore, they cannot arrest. They were unable to arrest for the 415 as a probable cause. They're simply going off of a call for service. And because they didn't do any other investigatory work, other than let me see your ID, there are no other articulable facts in which to support the probable cause for arrest. So with that, I would. But if there was a violation of state law, because the officer arrested the defendant, even though the misdemeanor did not occur in his presence, does that mean that there is a constitutional violation under the Fourth Amendment? Yes, your honor, because there was no. Can you direct me to a case that would hold? Well, it's simply just the, the actual jurisprudence on Fourth Amendment seizures. If you have no underlying violation of crime, you can arrest. Right. But there was, that's, that's not correct. I mean, the, if there was a violation of some state law procedure, that doesn't go to the Fourth Amendment issue. Well, we think that there was no violation of 148. He was arrested for 148, but he didn't violate 148. If your only articulable facts is that he refused to identify. It doesn't matter what the officers say. I mean, this isn't like a gotcha where if they say you're arrested for crime A, we can't look to crime B. The question is, is there probable cause that crime was committed? And here they had two sets of events. One was a phone call that, that went out to dispatch that alerted them to a person walking on the street who had done something wrong. And lo and behold, this was the only person on the street. He refused to identify himself by voice, you know, when he was first contacted and then he refused to provide ID. So when you add all that up together, which is what the officer had and under the collective knowledge doctrine, the officer had the, the initial call into his colleague in the dispatch. I just don't understand how this couldn't be probable cause, or at least at the very least qualified immunity. Well, we do believe that there was reasonable suspicion for the stop based upon the call for service. And that is where it ended. There was no probable cause for arrest because there was no investigation done further on the call for service. And because the arrest was done purely on the failure to identify. And because you can arrest on failure to identify in California, there, the arrest itself was a violation of the fourth amendment. There was no underlying violation of the law in which they could articulate probable cause for the actual arrest. As we stated earlier, we do concede that there was reasonable suspicion for the initial stop and potential investigation, but not for the arrest. But you agree that the defendant's identity was a relevant, if not important factor in the officer's determination as to whether or not criminal activity was afoot and whether or not the defendant was the one who was involved in the criminal activity, wouldn't you? I don't necessarily agree with that phrasing. I do believe that it was a fact that could have determined. And had it been determined, it may have been something that would help them lead them to another path. But they chose to not investigate in any other way. They simply just stopped with that. And when they did not get their way, they got angry and stuck their guns and arrested him. They could have asked many, many other questions that very well may have led them to the same conclusion. But we don't know because they didn't ask. All right. Thank you. We've taken you almost to the end of your time, but we'll put two minutes on the clock for rebuttal. And we'll hear from Mr. Lee. Thank you, Your Honor. Good afternoon, Your Honors. May it please the court. Arnold Lee on behalf of defendants of Hellies. As my colleague mentioned, a central issue on appeal is whether there was probable cause for the arrest of Plintiff when he, one, verbally assaulted an attorney, Ms. Karen Suri, repeatedly while simultaneously approaching her to within arm's reach, causing her to fear for her safety, and two, repeatedly refusing to identify himself after he was lawfully detained by a PPD detective responding to Ms. Suri's 911 call. The court should affirm the district court's granting of summary judgment because the undisputed material facts furnish probable cause for Plaintiff's arrest on two separate and independent grounds under Penal Code Section 148 and 415 Subsection 2. Although not considered by the district court, this court should also affirm summary judgment on another ground, which is based on several issues deemed admitted by Plaintiff as a result of his untimely response to defendant's discovery. Well, why don't you not, I think the last issue is probably not worth spending as much time on, so I would want to hear from you on the first two though. Understood, Your Honor. In terms of the two bases for arrest, I will address Penal Code Section 148 first. 148 makes it a crime to willfully resist, delay, or obstruct a law Detective Klotz received information from the police dispatcher regarding the 911 call by the victim, Ms. Suri, reporting that she was being followed, that the suspect was yelling at her, that he would not stop, and that she was afraid. So, when Detective Klotz responded to the general location of the area, he received an update to that call regarding the path of travel and general location of where the suspect was. Thus, when Detective Klotz observed that individual, who we later learn as Plaintiff, walking in that direction, provided by the updated radio call, he had the responsibility to detain and investigate further. To determine whether Plaintiff was the individual on the call, he asked Plaintiff to identify himself numerous times, but he refused to comply each time. This obstructed Detective Klotz in the performance of his lawful duties, since he was unable to, one, identify who he detained, two, whether the individual is indeed a Plaintiff, the suspect in the 911 call. Well, Counsel, your colleagues suggest that under California law, you don't have to give your ID. In response to that, Your Honor, I believe my colleague has taken, made perhaps a statement out of context in the Quinn, Quinn, uh, my apologies, Quinn Rogge case. Thank you. In that case, the court, the court's holding wasn't that you don't have to provide your identification. In that case, the suspect or the criminal defendant was actually still, uh, uh, charged with 148 for failure to identify himself at the time of booking. There, anything prior to that, uh, defendants would argue would be dicta in terms of whether or not one should be able to, uh, refuse to provide their identification or their, or their identity identity, um, uh, since it was not part of the holding of the case. However, as indicated in dissent defendants answering brief, I would argue that Hibble controls and that the sixth and 11th circuit have already recognized that. Hibble is the Supreme court case, right? That's correct. You're dealing with Nevada law. I mean, I don't think that controls, that doesn't control what California courts have said. It's laws are, I would argue your honor that based on that case and subsequent cases following Hibble, for example, in a then district court, judge Nelson, Lucy coast and Abdel Shafi versus city of San Jose judge co-recognized the same and arrived at some same conclusion that the failure to provide identification during a lawful Terry stopped in this case, plain conceded was a lawful furnishes probable cause to arrest under California one 48. I agree with, that's what a judge coast said, but I, you know, I was trying to figure out where, where, what the basis of that statement was. And I couldn't figure it out where, where in California law, what, which California courts have actually said that. I would argue that there's no specific statute delineating what the responsibility of a law is. As, as plaintiff argues, there's no stop in ID statute in California, but the district court from defendant's point of view correctly held that the United States Supreme court never held that a stop in ID statute is necessary to convict someone or to, to have probable cause to arrest someone under obstruction statute. I agree. But what we need is a California court telling us that a police officer can arrest someone for the, for meal failure to present an ID. And it sounds like you don't have that case. And defendants, if I may point to one case is actually a pellet division of a superior court. It's on page 37 of defendants answering brief people versus no lender. In that case, the court, the appellate division of the superior court did find that a person who was not arrested and who fails to furnish their identity can be violating California penal code 148 by failing to provide their identification. So in that case, at least then this was from the year 2019, there has been indication leaning toward that direction in California. Although there's no specific case that says you can or cannot do so in California appellate courts. But if I may also address on this issue in terms of before they do that, just if you have any questions on that before I proceed. Well, I just think no blur, however you say is distinguishable because I think the officer was writing a violation for the municipal code. So that's not quite the facts here. So I mean, to me, I agree that some federal district courts have said that there is this that there is this violation, but I haven't seen any California courts say that. So to me, at the very least, it shows that it's not established, well established. And does that mean that the officers entitled to qualified immunity? I would argue that they are in light of what your honor just mentioned. And also because of all the cases that follow Hibble, as well as the Nakamura case, which this circuit affirmed back in 2009. However, I would also want to like to argue that... Can I ask you a question, Mr. Lee? Would you agree that if Mr. Venegas had just been walking down the street, there had been no report to Officer Colts. And Officer Colts had stopped him and said, hey, show me your identification. Would you agree that that was a probably a Fourth Amendment violation? It would be a close call. And to a certain extent, I would agree it would not be permitted under the Fourth Amendment. But that's not what happened here. Right. So your point, if I understand it correctly, is that this officer had noticed the fact that was some criminal activity of foot. We don't know whether it was stalking 415 or something else. But he knew that there was something going on. And he knew that the person that supposedly was involved in it was this fellow by the name of Venegas, right? Correct. And then in order to do his job, one of the things he had to do is to ascertain whether the person that was walking down the street was the person that was suspected of the unlawful activity, right? That's correct. And that's kind of like distinguishable from the cases where, for example, there's a passenger in a car and just simply being a passenger in the car does not justify an officer asking for identification. Would you agree with that? I would agree with that, Your Honor. All right. So so you think these are distinguishable cases, right? Yes. OK, thank you. And I think it's important to point out, at least from Hibble, that, and defendants would argue, it's permitted here to stop and arrest Mr. Venegas for PC 148 because, one, as Hibble mentioned, the stop has to be justifiable at its inception. In this case, that was the case. Detective Plutz wasn't outgoing and having interaction with folks unrelated to the 911 call. Second, that the request for identification must be reasonably related in scope to the circumstance that justified the stop. And that's the case here as well. So under Hibble, Detective Plutz complied with these two requirements under the Fourth Amendment. So if I may touch upon the argument that there's no stop in ID statute in California for charging 148, I think to adopt plaintiff's reasoning, we require the state legislator to potentially spill out each and every responsibility of a law enforcement officer or detainee. And should that be the case, as defendants argue in our briefs, numerous cases would not pass constitutional muster and, in fact, would create illogical and senseless results. Importantly, it would also invalidate some cases where the criminal defendants were charged and specifying that a particular conduct constitutes obstruction. Like in people in Quiroga, there's no statute indicating that you must provide your identification at the time of booking. So using that reasoning, Your Honor, defendants submit that it's not necessary per se to have a stop in ID statute for a PC-148 arrest to comply with the Fourth Amendment in this case. I'd like to turn to the second basis of arrest under 415 subsection 2, if Your Honors are okay with that. Under 415, plaintiff's primary contention is that 415 should not be considered because Detective Plutz articulated that the basis for arrest is solely based on PC-148. I think, as Your Honors are aware, this argument fails under the circuit and Supreme Court precedent. In Devenpeck v. Alford, the Supreme Court made clear that the subjective reason for making the arrest need not be the criminal offense as to which was known, sorry, as to which the facts provided probable cause. Similarly, this circuit has held that, and I quote, if the facts supported probable cause to arrest for one offense, the arrest is lawful even if the officer invoked as a basis for arrest a different offense. And this is United States counsel. Isn't it true under California law, an officer cannot arrest someone for a misdemeanor unless he or she observes the offense? Under California law, you're right, Your Honor. However, the Ninth Circuit has held, and I quote, the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment. And this is Ferry v. Fowler, 902-F-770-772 in 1990. So that argument, at least defendants submit, is unavailing and unpersuasive. The fact that Officer Kless did not actually observe the crime does not, he wouldn't be violating the Fourth Amendment just because of violating a, quote-unquote, state law in that respect. So should the court find that probable cause did not exist under 415 or 148, defendants contend that the individual officers are entitled to qualify immunity for the reasons we discussed in terms of the fact that there's not a clearly established law as to whether it's permitted to arrest someone for failure to identify themselves. And for example, in this case where it's conceded there was sufficient to conduct a Terry stop. And also on the second point that it's violated clearly, whether or not it violated clearly established law to arrest plaintiffs based on all the information provided by Ms. Karen Suri. And to address the point that it was never investigated, Officer Real, and this is part of the record, he did conduct a complete investigation and drafted a report based on investigation. So this is not one of those where this and after the fact probable cause was thought out of for legal purposes because of a lawsuit, but rather there was a report of a 415 violation that was taken down at the scene of the incident, at the day of the incident. In terms of Monell, I know this wasn't addressed, but I would like to just quickly touch upon it. Plaintiff has not addressed or provided any evidence of deliberate indifference on the part of the entity defendant, which is required for failure to train theory. Plaintiff's only contention is that because the arrest is unlawful, Monell liability must attach. Defendants submit that this interpretation is unsupported by the law and misstates the law. Moreover, plaintiffs supplied no evidence to show any causation or quote-unquote the moving force between the alleged failure to train and the incident in this case. And unless your honors have further questions, defendants will submit. Okay, hearing none. Thank you, Mr. Lee. Ms. Heming. Yes, I just have one or two issues that I wanted to touch upon. The first one is regarding Mr. Venegas's behavior and that other behaviors that he may have exhibited may have constituted arrest for a 140 age. Mr. Venegas was not willfully delaying or obstructing. He spoke to the he convoys. He did not resist being arrested. He did not resist being stopped. He did not try and walk away or move his hands out from underneath officer cloths when he grabbed him. The only resistance, and I say that in quotes, is his verbal resistance, his refusal to ID. And as I've discussed at nauseam, that is not a basis for a 148. And then finally, I'd like to discuss, you know, this idea that even if California doesn't have a stop an ID statute, that there is no reason why an officer can't require people to stop at ID. And I think that that just opens up that very slippery slope to any time an officer feels someone looks funny, he can just stop them and say, show me your papers, and they'll have to show them their ID. And that's just not a society that I want to live in. But that's not what happened here. What had been stalking somebody. And what we know was reported in the dispatch was that he'd been screaming at an attorney following a divorce hearing. So this isn't a situation where they were just accosting him randomly. Agreed, Your Honor. But I do think that, you know, not not putting a stop to it at this point or saying, you know, hey, California doesn't doesn't require you to produce identification just because an officer asked you you don't have to produce until you were being arrested. And like the case that counsel pointed out in just second, excuse me, just second. That seems counterintuitive to me that you would only be able to ask for identification after you've been arrested. Because that's the only time that that information is important is who am I booking? Who am I arresting? Who am I charging with this charge? Up until that point, that information is not important. Well, it's important if somebody wants to say, hey, you got the wrong person. I mean, if it was if this was not Mr. Venegas, it was somebody else. They could have shown an ID that said they were somebody else. I mean, it's entirely understandable why the officer would have wanted to validate his identity, even if, frankly, he wasn't required to at that point. But that information could have been ascertained in many different ways. Just by asking simple questions. Where are you coming from? Where are you going? Did you stop and talk to so-and-so? Do you know who so-and-so is? Did you have a conversation with them? We got a call for service and someone was at any point in time. Mr. Venegas can say that's not me. I didn't talk to them. I didn't go there. I didn't do that. But just requiring someone to produce their identification so that you can find out who they are is is not an essential element to an investigation. There's many, many ways to skin a cat. And I don't think that relying on just having to produce identification should be one of them. Okay. I think we have your argument. We've let you go a little over and given you some extra time. I want to just thank you and thank your opposing counsel, Mr. Lee, for his arguments. And thank you, Ms. Hemming, for yours. This case is submitted. And that concludes our arguments for this afternoon. Thank you. Thank you, Your Honor. This court for this session stands adjourned.
judges: BRESS, BUMATAY, Benitez